UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CASSANDRA RHODES, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 26-cv-13124-ADB |
| TOWN OF SANDWICH, et al., | * | |
| Defendants. | * | |

**ORDER ON EMERGENCY MOTIONS**

BURROUGHS, D.J.

On July 7, 2026, pro se Plaintiff Cassandra Rhodes ("Rhodes"), a resident of Sandwich, Massachusetts, filed a civil rights complaint against the Town of Sandwich, a Sandwich police officer, and two Massachusetts Assistant District Attorneys. [ECF No. 1].[1] With the complaint, Rhodes filed an emergency motion for an ex parte temporary restraining order and preliminary injunction, [ECF No. 2], which the Court previously declined to proceed on ex parte, [ECF No. 9]. On July 20, 2026, Rhodes filed two additional emergency motions: a motion for a preliminary injunction, [ECF No. 17], and a "motion to designate clinical witness protector and to enjoin defendants from forced discharge or homelessness," [ECF No. 20]. On August 17,

[1] Rhodes purported to bring this action on behalf of her herself and her two children, identified as A.V. (a disabled minor child) and M.R. (an incapacitated 18-year-old adult). As the Court previously informed Rhodes, she "cannot represent her children in this action." [ECF No. 9]. Because neither the complaint nor any of Rhodes's subsequent filings were signed by A.V. or M.R., or by an attorney representing them, Rhodes's children have not properly been made plaintiffs in this action. See Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by . . . a party personally if the party is unrepresented."). Accordingly, the clerk is directed to remove A.V. and M.R. from the docket.

2026, Rhodes filed one further emergency motion for a "temporary protective order." [ECF No. 40]. Before the Court are all four emergency motions filed by Rhodes. For the following reasons, Rhodes's motions are **DENIED**.[2]

## I. BACKGROUND

Rhodes seeks equitable and monetary relief for alleged violations of her rights under 42 U.S.C. §§ 1983 and 1985.[3] See [ECF No. 1 at 7–8]. More specifically, she alleges First Amendment retaliation, [id. ¶¶ 35–39], due process violations including an unreasonable search of her home, [id. ¶¶ 40–42], and a conspiracy to suppress evidence, [id. ¶¶ 43–45]. As best as the Court can discern, her claims stem from a variety of interactions she has had with Sandwich police officers and Massachusetts Assistant District Attorneys in connection with a criminal investigation and prosecution of Rhodes's husband, Nicholas Rhodes, for the alleged sexual assault of Rhodes's daughter, M.R.

### A. Rhodes's Original Complaint and Motion

The complaint, [ECF No. 1], and Rhodes's original motion for a temporary restraining order ("TRO Motion"), [ECF No. 2], assert that in 2024, Defendant Heather Houska ("Houska"),

---

[2] Rhodes's later-filed motions for entry of default, [ECF No. 34], to strike Defendants' oppositions, [ECF No. 36], and for sanctions, [ECF No. 40], are also **DENIED**, and her request to expedite ruling on her previous motions, [id.] is **DENIED AS MOOT** in light of the Court's ruling. Default is inappropriate because the Court previously extended the deadline for all Defendants to respond to the complaint to August 28, 2026, [ECF No. 30], so no Defendant has failed to answer. And although the two separately filed opposition briefs, [ECF No. 32]; [ECF No. 35], did not fully comply with the Court's July 23, 2026, order, which instructed Defendants to file a single consolidated response, [ECF No. 26], the Court will excuse the error and accept the briefs in the interest of speedily resolving Rhodes's emergency motions.

[3] The complaint also asserts a claim under the Americans with Disabilities Act, but it appears to be asserted only on behalf of M.R. and A.V. [ECF No. 1 ¶¶ 47–49]. Because M.R. and A.V. have not properly been made plaintiffs in this action, supra Footnote 1, this claim is **DISMISSED** without prejudice.

a Sandwich police officer, attempted to perform a "wellness check" on Rhodes's home, during the course of which she interviewed Rhodes and tried to "intimidat[e]" her into making false statements. [ECF No. 2-2 ¶ 3]. They further assert that two Massachusetts Assistant District Attorneys overseeing grand jury proceedings in which Rhodes was a witness, Defendants Courtney Scalise ("Scalise") and Emily Nesson Cardia ("Cardia") (collectively, the "ADA Defendants"), took a variety of actions in connection with those grand jury proceedings and the subsequent prosecution that caused Rhodes to feel harassed, including "walk[ing] towards [Rhodes] in a threatening manner," "yell[ing] at her," "glar[ing] at [her] . . . for 50 minutes during [her] testimony," and making false statements about Rhodes and her daughter in subsequent court appearances and filings. [Id. ¶¶ 5–9]; [ECF No. 2 at 8].[4] Rhodes also alleges other instances of prosecutorial misconduct in connection with the prosecution of Nicholas Rhodes, including suppressing evidence and misleading the Court. [ECF No. 2 at 5–10].

In her TRO Motion, Rhodes expresses fear of "an immediate, hostile law enforcement reprisal against her home," [ECF No. 2 at 14], and asks for an order (1) prohibiting agents of the Sandwich police department from entering onto Rhodes's property, (2) prohibiting the ADA Defendants from issuing state-court subpoenas or otherwise attempting to compel her testimony, (3) prohibiting all Defendants from attempting to contact or interview M.R. outside the presence of her mother and legal counsel, (4) prohibiting all Defendants from making further "retaliatory court filings" that target Rhodes or her children, (5) prohibiting all Defendants from accessing her children's medical or psychotherapeutic records, and (6) sealing "any and all medical

---

[4] It appears that the grand jury proceedings Rhodes references concerned her husband, Nicholas Rhodes, and resulted in him being indicted on charges relating to the aggravated rape of a minor, which are currently pending in Barnstable Superior Court. See [ECF No. 32-3]. It further appears that M.R. is the alleged victim in these charges. See [ECF No. 32-2 at 2].

records, psychotherapeutic files, clinical diagnoses, and Department of Children and Families (DCF) investigative summaries concerning M.R. and A.R.," [id. at 19–20].

### B. Rhodes's Subsequent Motions

On July 20, 2026, while her TRO Motion remained pending, Rhodes filed two additional motions: (1) a motion for a preliminary injunction ("First PI Motion"), [ECF No. 17], and (2) a motion "to designate clinical witness protector and to enjoin Defendants from forced discharge or homelessness," which the Court construes as a motion for injunctive relief ("Second PI Motion"), [ECF No. 20]. On August 17, Rhodes filed one further motion seeking a "temporary protective order," which the Court also construes as a motion for injunctive relief ("Third PI Motion"), [ECF No. 40]. All three motions introduced new facts.

In her First PI Motion, Rhodes recounts events occurring after the filing of her TRO Motion, which she characterizes as "active, violent, and ongoing physical retaliation" for "exposing municipal and prosecutorial misconduct." [ECF No. 17 at 1–2]. Rhodes contends that, after filing her TRO Motion, police "kick[ed] in [her] door," and she was "violently arrest[ed]," though she provides few additional details about the events that surrounded the arrest itself. [Id. at 2].

Based on the Court's review of the parties' submitted evidence, it appears that Rhodes's daughter, M.R., who was residing in-patient at Cape Cod Hospital at the time, asked to speak with police officers on July 8, 2026—the day after Rhodes filed her complaint—and reported that Rhodes had "told [M.R.] she would go to jail for making false allegations" in the sexual assault case against Nicholas Rhodes, "even though [M.R.] reported they were not false." [ECF No. 32-2 at 2]. According to the Sandwich police, M.R. further told officers that Rhodes had instructed her "not [to] talk to the police, District Attorneys or Department of Mental Health."

[Id.]. Rhodes contends that M.R. is severely mentally ill and that the statements she gave to the police were false and coerced. [ECF No. 18 ¶¶ 3, 5]. Nonetheless, based on these statements, Sandwich police officers obtained an arrest warrant against Rhodes for witness intimidation. [ECF No. 32-2 at 4]. That evening, officers went to Rhodes's house to execute the arrest warrant, resulting in a confrontation during which Rhodes refused to open her locked door, leading officers to enter by force and arrest her. [ECF No. 18 ¶¶ 7–9]; [ECF No. 32-2 at 4–5].

In her First PI Motion, which is based on this encounter, Rhodes contends that her arrest was in retaliation for filing this lawsuit and asks the Court for several forms of additional relief, including mandating that Defendants remain at least 500 feet away from Rhodes and her family and staying any "state administrative or judicial proceedings" resulting from M.R.'s July 8, 2026, statement to police, and requiring the Sandwich Police Department to preserve and produce body-worn camera footage from July 8 to July 9, 2026. [ECF No. 17 at 6–7]. She also renews her request for much of the relief sought in her TRO Motion, including prohibiting police contact with M.R. [Id.].

Finally, in her Second PI Motion and Third PI Motion, Rhodes recounts events that are alleged to have taken place after her July 8, 2026, arrest. [ECF No. 20]. According to Rhodes, M.R. has ceased cooperating with the prosecution of Nicholas Rhodes, leading Rhodes to fear that Defendants will retaliate against M.R. by "forc[ing] an abrupt, unsafe medical discharge" from in-patient psychiatric care. [Id. at 2]. She further reveals that she is unaware of M.R.'s current whereabouts. [Id.]. In her Third PI Motion, Rhodes makes additional statements concerning similar issues. [ECF No. 40 at 3].[5]

---

[5] Because the Court allowed Plaintiff to file the Third PI Motion under seal, the Court makes only general references to the content of the filing.

As relief, Rhodes's Second PI Motion asks the Court to order that a psychotherapist named Susan McSweeney, who has a therapeutic relationship with both Rhodes and M.R., be given "immediate authority to monitor [M.R.'s] current medical placement, safety, and physical whereabouts," and that M.R. not be discharged from any "medical, psychiatric, or residential facility" without Ms. McSweeney's prior review and approval. [ECF No. 20 at 3]. In her Third PI Motion, Rhodes largely reiterates her previous requests. [ECF No. 40 at 5–6].

## II. LEGAL STANDARD

All four of Rhodes's pending emergency motions seek preliminary injunctions under Rule 65 of the Federal Rules of Civil Procedure.[6] Such relief is "an 'extraordinary and drastic remedy' . . . that 'is never awarded as of right.'" Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689–90 (2008)). To obtain it, a movant must establish "that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest." New York v. Trump, 171 F.4th 1, 15 (1st Cir. 2026) (internal brackets omitted) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). Likelihood of success on the merits "weighs most heavily" in the analysis. CVS Pharm., Inc. v. Lavin, 951 F.3d 50 (1st Cir. 2020) (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)). To show such a likelihood, "a

---

[6] Although Rhodes's TRO Motion, [ECF No. 2], sought a temporary restraining order, the Court previously explained that Rhodes failed to show she was entitled to proceed ex parte. [ECF No. 9]. Because "Courts apply the same standard in assessing" both temporary restraining orders and preliminary injunctions, and the Court is considering the motion "follow[ing] full briefing and the opportunity to be heard by the Court," it evaluates the request as one for a preliminary injunction. Massachusetts v. Nat'l Insts. of Health, 770 F. Supp. 3d 277, 295 (D. Mass. 2025) (citing Wash. Tr. Advisors, Inc. v. Arnold, 646 F. Supp. 3d 210, 217 (D. Mass. 2022)).

plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings." Whoop, Inc. v. Shenzhen Lexqi Elec. Tech. Co., 818 F. Supp. 3d 207, 222 (D. Mass. 2026) (quoting Strahan v. Roughead, No. 08-cv-10919, 2010 WL 4827880, at *10 (D. Mass. Nov. 22, 2010)).

## III. DISCUSSION

### A. Motion for a Temporary Restraining Order

Rhodes's TRO Motion is based on Defendants' alleged conduct in connection with the investigation, including grand jury proceedings, and the subsequent prosecution of Nicholas Rhodes. [ECF No. 2]. Rhodes has not shown that she is entitled to the relief she requests in her TRO Motion. [Id.].

First, Rhodes fails to show a likelihood of success on the merits. Rhodes brings claims pursuant to 42 U.S.C. § 1983 and § 1985. [ECF No. 1 ¶¶ 35–45, 49–52]. To prevail on a claim under § 1983, a plaintiff must demonstrate "(1) conduct by a person (2) acting under color of state law, (3) who caused (4) a deprivation of the plaintiff's federally protected rights." Hewes v. Pangburn, 162 F.4th 177, 190 (1st Cir. 2025).

To prevail on a claim under § 1985, a plaintiff must allege four elements:

> First, the plaintiff must allege a conspiracy; second, [s]he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, [s]he must identify an overt act in furtherance of the conspiracy; and finally, [s]he must show either injury to person or property, or a deprivation of a constitutionally protected right.

Parker v. Landry, 935 F.3d 9, 17–18 (1st Cir. 2019) (alterations in original) (quoting Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008)). To satisfy the first two elements, the plaintiff "must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of her civil rights." Id. at 18. The alleged agreement "must

involve 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)); see also Aulson v. Blanchard, 83 F.3d 1, 4 (1st Cir. 1996) ("[P]laintiffs must allege facts showing that (1) the defendants conspired against them because of their membership in a class, and (2) the criteria defining the class are invidious."). In the absence of direct evidence of such an agreement, the plaintiff "must plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." Parker, 935 F.3d at 18.

Here, Rhodes alleges violations of rights protected by the First, Fourth, and Fourteenth Amendments. [ECF No. 1]. To succeed on a First Amendment retaliation claim, Rhodes must prove that she (1) "engaged in First Amendment-protected conduct," (2) "suffered an adverse action," and (3) her "protected conduct played a 'substantial or motivating' part in the adverse action." Berge v. Sch. Comm. of Gloucester, 107 F.4th 33, 37 n.4 (1st Cir. 2024) (quoting Gattineri v. Town of Lynnfield, 58 F.4th 512, 514 (1st Cir. 2023)).

To succeed on a Fourth Amendment unreasonable search claim, Rhodes must show that (1) a search occurred within the meaning of the Fourth Amendment, and (2) the search was unreasonable, considering "the degree to which [the search] intrude[d] upon [her] privacy" and "the degree to which [the search] [wa]s needed for the promotion of legitimate government interests." U.S. v. Scanzani, 392 F. Supp. 3d 210, 216–17 (D. Mass. 2019) (quoting United States v. Graham, 553 F.3d 6, 15 (1st Cir. 2009)).

To succeed on a Fourteenth Amendment substantive due process claim based on executive action, Rhodes must show that she "suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks the conscience." Maldonado-González v. Puerto Rico Aqueduct & Sewer Auth., 158

F.4th 27, 34 (1st Cir. 2025) (quoting Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008)).to succeed on a claim for disability discrimination against a public entity under the ADA, a plaintiff must show that he (1) suffers from a disability within the ADA's definition, and (2) was "subjected to discrimination by any [public] entity" on the basis of that disability. 42 U.S.C § 12132.

Rather than satisfy any of these established legal standards, the evidence Rhodes presents consists solely of vague and conclusory assertions of bad faith and harassment by various public officials. Her only concrete allegations concerning Houska and, by extension, the Town of Sandwich, are that Houska performed a wellness check on Rhodes's residence in 2024, asked Rhodes questions, asked her to report to the Sandwich Police Department, drove by her house on several occasions, and sat in the room during Rhodes's grand jury testimony. [ECF No. 2-2 ¶¶ 3–6]. Rhodes provides nothing more than labels and conclusions to support her characterization of these actions as "intimidat[ing]," "harass[ing]," or "coerc[ive]." [Id.]. Likewise, her only concrete allegations concerning the ADA Defendants' conduct toward her is that they attempted to get her to enter a private room, walked towards her, spoke loudly at her, and "slammed" a stack of file folders on a table near her head. [Id. ¶¶ 5–8]. Again, Rhodes provides no evidence to support her characterization of these actions as an "assault," or as "aggressive[]," "threatening," or "intimidat[ing]" enough to plausibly constitute a violation of Rhodes's First, Fourth, or Fourteenth Amendment rights, or her rights under the ADA. [Id.]. Nor does she provide a reasonable factual basis to expect that such violations will occur in the

future. Accordingly, Rhodes has not established that she is likely to succeed in showing a violation of her constitutional or statutory rights.[7]

To the extent Rhodes bases her claims on alleged bad faith, misleading statements, improper pursuit of her daughter's medical records, or other prosecutorial misconduct in connection with her husband's prosecution, those claims fail for several additional reasons. First, Rhodes does not have standing to challenge actions that allegedly violate the rights of third parties. See MSP Recovery Claims Series 44, LLC v. Bunker Hill Ins. Co., 683 F. Supp. 3d 172, 179 (D. Mass. 2023) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)) ("A party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"). Rhodes does not explain how actions taken to prosecute her husband or obtain her daughter's medical records violate Rhodes's own constitutional or statutory rights.

Further, assuming Rhodes's claims had a basis, she still would not be entitled to the remedy she seeks because of the doctrine of Younger v. Harris, 401 U.S. 37 (1971), which, "unless there are extraordinary circumstances, . . . instructs federal courts not to 'interfere with ongoing state-court litigation,'" Rossi v. Gemma, 489 F.3d 26, 34 (1st Cir. 2007) (quoting Maymó-Meléndez v. Alvarez-Ramírez, 364 F.3d 27, 31 (1st Cir. 2004)). From the facts of this case, it appears that the ongoing state prosecutions of Rhodes and her husband satisfy the "basic

[7] Although Rhodes does not appear to assert a claim under the Americans with Disabilities Act on her own behalf, supra Footnote 4, the Court notes that, to the extent Rhodes does assert such a claim, she has similarly failed to show a likelihood of success on its merits. To succeed on a claim for disability discrimination against a public entity under the ADA, Rhodes must show that she (1) suffers from a disability within the ADA's definition, and (2) was "subjected to discrimination by any [public] entity" on the basis of that disability. 42 U.S.C § 12132. Rhodes has provided no evidence that she was subjected to discrimination by any Defendant on the basis of an ADA-qualifying disability.

analytical framework for Younger abstention," id., and Rhodes has made no showing of exceptional circumstances. Rhodes therefore fails to show a likelihood of success on the merits of any of her claims.[8]

Second, Rhodes fails to show irreparable harm. She asserts that she will face "immediate, daily, and irreversible psychological trauma" absent her requested relief due to "hostile law enforcement reprisal against her home" by Defendants. [ECF No. 2 at 14, 17]. It is not clear from her submissions, however, what specific "retaliatory" conduct Rhodes believes will occur absent her requested relief, much less that such retaliation is in fact likely to occur. She therefore fails to show a likelihood of irreparable harm.

Accordingly, Rhodes has not met her burden to show that she is entitled to the relief requested in her TRO Motion.

### B. First Motion for a Preliminary Injunction

Rhodes's First PI Motion, filed July 20, 2026, and based on Rhodes's allegedly retaliatory arrest on July 8, 2026, seeks much of the same relief as her TRO Motion, in addition to a 500-foot stay-away order, a prohibition on utilizing M.R.'s July 8, 2026 statements to the police in connection with any prosecution or administrative proceeding, and an order requiring

[8] In their opposition brief, the ADA Defendants also argue that Rhodes's claims fail against them because they are entitled to absolute prosecutorial immunity. [ECF No. 32 at 9–10]. "Absolute immunity," however, applies only to "damages liability," while prosecutors "are natural targets for § 1983 injunctive suits since they are the state officers who are threatening to enforce and who are enforcing the law." Sup. Ct. of Va. v. Consumers Union of the U.S., Inc., 446 U.S. 719, 736 (1980); see also Anilao v. Spota, 27 F.4th 855, 863 (2d Cir. 2022) (citing Imbler v. Pachtman, 424 U.S. 409, 427 (1976)) ("The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit." (emphasis added)). Because the present motions only implicate Rhodes's claims for injunctive relief, the Court disagrees with the ADA Defendants' absolute immunity argument.

preservation of body camera footage from July 8 and July 9, 2026. [ECF No. 17 at 6–7]. Rhodes has not shown that she is entitled to the relief she requests in her First PI Motion.

As an initial matter, the Court notes that "[a] party who moves for a preliminary injunction 'must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" Kosilek v. Misi, 630 F. Supp. 3d 328, 334 (D. Mass. 2022) (quoting Arenella v. Cregg, No. 14-cv-14764-FDS, 2016 WL 1555680, at *2 (D. Mass. Apr. 15, 2016)). Rhodes bases her First PI Motion upon conduct that occurred after the filing of her complaint. [ECF No. 17 at 2–3]. Rhodes never attempted to amend or supplement her complaint to assert this conduct as the basis for any claim. See Fed. R. Civ. P. 15. Accordingly, Rhodes's First PI Motion seeks relief "untethered to h[er] complaint," which is alone a basis for denying it. Beers v. N.H. State Prison Warden, 752 F. Supp. 3d 431, 435–36 (D.N.H. 2024).

Even setting that issue aside, Rhodes's First PI Motion fails to show a likelihood of success on the merits of any new claims it purports to raise. First, Rhodes does not identify any way in which any Defendant other than the Town of Sandwich was involved with the events recounted in her First PI Motion, so it fails at the outset against the ADA Defendants and Houska. [ECF No. 17 at 2–3]. Second, the First PI Motion fails against the Town because Rhodes has failed to show standing to seek prospective relief based upon her arrest. "[T]o obtain injunctive relief, a party must show 'ongoing injury or a sufficient threat that the injury will recur . . . .'" New Eng. Synod v. Dep't of Homeland Sec., 824 F. Supp. 3d 118, 140 (D. Mass. 2026) (quoting Roe v. Healey, 78 F.4th 11, 21 (1st Cir. 2023)). "'[P]ast harm' otherwise 'does not confer standing to seek forward-looking declaratory or injunctive relief.'" Id. (quoting Roe, 78 F. 4th at 21). Even assuming, arguendo, that Rhodes's rights were violated in some way

during her July 8, 2026, arrest, she has not presented evidence that any such violation will likely occur again in the future.[9] See [ECF No. 17 at 2–3 (asserting only past harms to Plaintiff and her family)]. To the extent Rhodes contends that her ongoing prosecution for witness intimidation is itself unlawful retaliation under the First Amendment, she has failed to meet her burden to show that her arrest was motivated by her exercise of her First Amendment rights, particularly in light of the temporally proximate statements from M.R. that appear to have formed the basis for the arrest. [ECF No. 32-2 at 3–5]; see Nieves v. Bartlett, 587 U.S. 391, 402 (2019) (noting that "the presence of probable cause will [generally] suggest [that animus was not the cause of the arrest]"). Moreover, as discussed above, this Court is barred from interfering with Rhodes's ongoing state criminal prosecution under the principles set forth in Younger, 401 U.S. at 41. Therefore, Rhodes has failed to show a likelihood of success on the merits as required to grant her First PI Motion.

### C. Second and Third Motions for a Preliminary Injunction

Rhodes's Second PI Motion, also filed July 20, 2026, and Third PI Motion, filed August 17, 2026, are based on Rhodes's alleged fear that the Defendants will cause her daughter, M.R., to be prematurely discharged from in-patient psychiatric care as retaliation for M.R.'s alleged non-cooperation with the prosecution of Nicholas Rhodes. [ECF No. 20]; [ECF No. 40]. Once again, Rhodes has not shown that she is entitled to the relief she requests in her Second PI Motion or Third PI Motion.

These two motions both suffer from many of the same fatal defects discussed above in relation to her other two motions. First, they are not tethered to any claims asserted in her

[9] For substantially the same reason, Rhodes's First PI Motion also fails under the irreparable harm prong of the injunctive relief test.

complaint. See Kosilek, 630 F. Supp. 3d at 334. Rhodes's complaint says nothing about the forced psychiatric discharge of her daughter, see [ECF No. 1], and Rhodes's Second PI Motion does not explain what constitutional or statutory claims she is asserting as the basis for injunctive relief, [ECF No. 20 at 1–2]. Second, these motions seek relief based on the alleged rights and interests of third parties. See MSP Recovery, 683 F. Supp. at 179. Rhodes does not attempt to frame this request in terms of her own claims or constitutional rights, and the only outcome she seeks to prevent through the requested relief is alleged harm to her daughter. [ECF No. 20 at 2–3]. And third, Rhodes has not shown that the Defendants named in this action are in fact likely to take actions to cause M.R.'s discharge. See New Eng. Synod, 824 F. Supp. 3d at 140. Rhodes's Second PI Motion does not cite any evidence at all and simply asserts that Rhodes "possesses a legitimate, well-founded fear" that Defendants will "manipulate [M.R.'s] medical discharge to force her into immediate homelessness." [ECF No. 20 at 2]. Rhodes's Third PI Motion likewise offers nothing to connect any potential discharge of M.R. to the conduct of Defendants or explain how Defendants could force M.R.'s discharge from a private psychiatric facility. [ECF No. 40 at 2–3]. Accordingly, Rhodes is not entitled to the relief requested in her Second or Third PI Motions.[10]

## IV. CONCLUSION

For the foregoing reasons, Rhodes's pending motions, [ECF No. 2]; [ECF No. 17]; [ECF No. 20]; [ECF No. 34]; [ECF No. 36]; [ECF No. 40], are **DENIED**.

[10] Regarding Rhodes's request to proceed ex parte on her Third PI Motion, [ECF No. 40], Rhodes may not do so for the reasons explained in the Court's July 9, 2026 order. [ECF No. 9]. Accordingly, the clerk is directed to remove the ex parte restriction from ECF No. 40, though the filing may remain under seal.

**SO ORDERED.**

August 17, 2026

*<u>/s/ Allison D. Burroughs</u>*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE